```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

**LARRY W. PEPPER, JR.,**

      Plaintiff,

v.                                    Civil Action No. 2:12-cv-01459

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,**

      Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the motion by plaintiff Larry Pepper, Jr. to remand, filed June 4, 2012.  For the reasons explained herein, the court finds that defendant State Farm Mutual Automobile Insurance Company ("State Farm") has adequately established that the action is subject to this court's diversity jurisdiction.  Pepper's motion is therefore denied.


I. Background

On May 28, 1998, Pepper, a resident of Ravenswood, West Virginia, was involved in an automobile accident with Timothy B. Elkins.  Compl. ¶¶ 1, 5.  At the time of the incident, Elkins

maintained a State Farm automobile liability insurance policy, which provided liability coverage of up to $100,000 per person and $300,000 per accident. Compl. ¶ 7. Pepper settled his claims against Elkins in exchange for payment of Elkins' per person liability coverage limit of $100,000. Id. ¶ 12. Pepper contends, however, that the Elkins settlement did not fully compensate him for his loss.

Pepper was also insured by State Farm. His policy included liability insurance coverage of up to $100,000 per person, $300,000 per accident, and $50,000 for property damages. Id. ¶ 8. Pepper's policy did not provide underinsured motorist ("UIM") coverage. Id. Under West Virginia law, insurers are required to make a commercially reasonable offer of UIM coverage in an amount equal to the liability limits of the underlying policy. W. Va. Code § 33-6-31(b). They must use the offer form "prepared and made available" by the West Virginia Insurance Commissioner. Id. § 33-6-31d(a). Pepper alleges that State Farm's mandatory offer was defective because State Farm did not use the prescribed forms.

When an insurer fails to make a valid offer of UIM coverage, the policy is reformed to include UIM coverage by operation of law. See Riffle v. State Farm Mut. Auto. Ins. Co., 186 W.Va. 54, 55, 410 S.E.2d 413, 414 (1991). Accordingly, on March 16, 2012, Pepper filed suit against State Farm in the Circuit Court of Kanawha County, West Virginia seeking recovery under a reformed contract. He alleges

2

breach of contract (Count I) and common law bad faith (Count II) arising from State Farm's refusal to pay UIM coverage.

In relief for the alleged breach of contract, Pepper seeks a UIM coverage payment equal to the excess of Pepper's accident damages over the $100,000 Elkins settlement. Compl. ¶ 23. Because UIM coverage is limited to the value of the policy holder's liability coverage, reformed UIM coverage would have a $100,000 limit. Pepper also requests recovery of "other economic and non-economic damages" that stem from State Farm's breach, including "compensatory damages . . . for net economic loss, attorney fees, and consequential damages." Id. ¶¶ 26-27.

For his common law bad faith claim, Pepper seeks damages as outlined by the Supreme Court of Appeals of West Virginia in Hayseeds, Inc. v. State Farm Fire & Casualty. 177 W.Va. 323, 352 S.E.2d 73 (1986). These include attorney fees in an amount "[p]resumptively . . . one-third of the face amount of the policy," plus recovery for the "net economic loss caused by the delay in settlement, as well as an award for aggravation and inconvenience." Id. at 329-30, 352 S.E.2d at 80. Finally, Pepper seeks pre-judgment and post-judgment interest and such further damages as the court may deem just and proper. Compl. 6.

On May 9, 2012, State Farm removed the action, invoking this court's diversity jurisdiction. On June 4, 2012, Pepper filed

3

the pending motion to remand, asserting that State Farm has not demonstrated by a preponderance of the evidence that Pepper's claims exceed the jurisdictional amount.

## II. The Governing Standard

"Except as federal law may otherwise provide, when a defendant removes a state civil action to federal district court, federal removal jurisdiction exists if the action is one 'of which the district courts of the United States have original jurisdiction.'" In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006) (quoting 28 U.S.C. § 1441(a)). Because removal jurisdiction implicates significant federalism concerns, it is strictly construed, and if federal jurisdiction is doubtful, the case must be remanded. See Palisades Collections LLC v. AT&T Mobility LLC, 552 F.3d 327, 336 (4th Cir. 2008); Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey, 29 F.3d at 151.

Pursuant to 28 U.S.C. § 1332(a)(1) diversity jurisdiction, district courts possess original jurisdiction over all actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." If a diversity jurisdiction case is initially filed in federal court,

4

the court will consider the amount in controversy requirement satisfied unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).  When a defendant removes a case with unspecified damages from state court, however, the defendant "must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount."  Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D. W. Va. 1996); see also Bartnikowski v. NVR, Inc., 307 F. App'x. 730, 734 n.7 (4th Cir. 2009) (applying a preponderance standard that "sister circuits have explicitly adopted," but reserving the right to consider "whether a more stringent standard would be appropriate").

The court considers the entire record and makes an independent evaluation of whether the amount in controversy has been satisfied.  Weddington v. Ford Motor Credit Co., 59 F. Supp. 2d 578, 584 (S.D. W. Va. 1999).  The court must conduct that evaluation "on the basis of the record existing at the time the petition for removal is filed."  Landmark Corp., 945 F. Supp at 936.  Important factors include the type and extent of the plaintiff's injuries and the possible damages recoverable from those injuries.  McCoy v. Norfolk S. Ry. Co., 858 F. Supp. 2d 639, 649 (S.D. W.Va. 2012).  A court can

also consider as a factor a plaintiff's settlement demands prior to removal.  Id.

### III. Discussion

The diversity of citizenship between Pepper and State Farm is not disputed.  The lone issue is whether State Farm has shown by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.

Central to the dispute is the question of how to valuate the amount in controversy when a plaintiff seeks to enforce an insurance claim via reformation of a policy.  Pepper asserts that the amount in controversy is the value of his UIM claim, which he contends falls far below the $75,000 statutory threshold.  State Farm, in contrast, contends that the amount in controversy is the $300,000 face value of the UIM coverage that a reformed policy would create.[1]

Both parties rely on this district's decision in Darbet, Inc. v. Bituminous Casualty Corp., 792 F. Supp. 487, 488-89 (S.D. W. Va. 1992).  Darbet divides insurance policy claims for our purposes into two categories.  In the first, "a declaratory judgment

---

[1] State farm bases its assertion on the $300,000 accident limit for UIM coverage.  The limit implicated in this action, however, is the $100,000 individual limit.  Since both values surpass the $75,000 jurisdictional threshold, the court need not consider which constitutes the appropriate "face value" of the policy for this case.

action call[s] into question the validity of a contract of insurance such as when the insurer contends the policy is lapsed for nonpayment of premiums," in which case "the amount in controversy is the face amount of the policy."  Id. at 488-89; see also Hawkins v. Aid Ass'n for Lutherans, 338 F.3d 801, 805 (7th Cir. 2003); Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997).  In the second, "the question is the applicability of the policy to a particular occurrence," in which case "the amount in controversy is the value of the underlying claim, not the face amount of the policy."  Darbet, 792 F. Supp. at 489; see also Budget Rent-A-Car, Inc., 109 F.3d at 1473.  State Farm asserts that Pepper's requested reformation to include UIM coverage makes this action fall within the first category.  Pepper contends that valuation under the second category is appropriate since his claim is based on a particular occurrence.

Because validity is the central issue in this case, the face value of the UIM coverage is the proper measure for the amount in controversy.  Before Pepper can apply UIM coverage to a particular occurrence, he must seek reformation of his contract -- that is, prove the validity of the UIM coverage.  This case is thus analogous to the declaratory judgment action described in Darbet.  This is not an action challenging the "applicability of the policy to a particular occurrence."  Here, even if the policy were reformed to

7

include UIM coverage, there would still be no question as to the applicability of the policy to a particular occurrence; UIM coverage by definition applies to the excess costs in an automobile accident such as Pepper's. Inasmuch as the issue here is the viability of the UIM policy, the proper measure of the amount in controversy is the face value of the claimed coverage.

This result is supported by Bell v. Philadelphia Life Insurance Co., 78 F.2d 322 (4th Cir. 1934), a case relied on for the distinction made in Darbet. Darbet, 792 F. Supp. at 489. In Bell, the plaintiff sought $600 in disability pay from a $10,000 life insurance policy, which the defendant insurance company alleged had lapsed. 78 F.2d at 323. Although the plaintiff claimed only the sum owed from the occurrence of his disability, the court found that the then $3,000 jurisdictional amount was met because "the policy itself is directly in controversy and its value determines the value in suit." Id. at 323. Here, Pepper seeks an entirely new form of insurance, not the application of existing coverage to a contested occurrence. As in Bell, the policy itself is directly in controversy, and the amount in controversy must be the face value of the UIM coverage. As such, the jurisdictional amount is met, and the case is properly within the diversity jurisdiction of this court.[2]

---

[2] In view of this determination, State Farm's alternative ground that Pepper's damage claims independently establish the jurisdictional amount need not be addressed.

IV.

For the reasons set forth, it is accordingly ORDERED that Pepper's motion to remand be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

ENTER: December 14, 2012

John T. Copenhaver, Jr.
United States District Judge