```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**LARRY W. PEPPER, JR.,**

    Plaintiff,

v.                                          Civil Action No. 2:12-cv-01459

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,**

    Defendant.


## MEMORANDUM OPINION AND ORDER

Pending is plaintiff Larry Pepper's motion for leave to amend his complaint so as to modify the factual basis of his allegations, filed November 5, 2012. Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") responded in opposition on November 19, 2012. For reasons explained herein, the court grants the motion.


### I. Background

On May 28, 1998, Pepper, a resident of Ravenswood, West Virginia, was involved in an automobile accident with Timothy B. Elkins. Compl. ¶¶ 1, 5. At the time of the incident, Elkins maintained a State Farm automobile liability insurance policy,

which provided liability coverage of up to $100,000 per person and $300,000 per accident.  Compl. ¶ 7.  Pepper settled a 2010 lawsuit against Elkins in exchange for payment of Elkins' per person liability coverage limit of $100,000.  Id. ¶ 12.  Pepper contends, however, that the Elkins settlement did not fully compensate him for his loss.

Pepper was also insured by State Farm.  His policy included liability insurance coverage of up to $100,000 per person, $300,000 per accident, and $50,000 for property damage.  Id. ¶ 8.  Pepper's policy did not provide underinsured motorist ("UIM") coverage.  Id.  Under West Virginia law, insurers are required to make a commercially reasonable offer of UIM coverage in an amount equal to the liability limits of the underlying policy.  W. Va. Code § 33-6-31(b).  To make a valid offer, insurers must use the offer form "prepared and made available" by the West Virginia Insurance Commissioner.  Id. § 33-6-31d(a).  When an insurer fails to make a valid offer of UIM coverage, the policy is reformed to include UIM coverage by operation of law.  See Riffle v. State Farm Mut. Auto. Ins. Co., 186 W.Va. 54, 55, 410 S.E.2d 413, 414 (1991).

On March 16, 2012, Pepper filed suit against State Farm in the Circuit Court of Kanawha County, West Virginia, alleging

that State Farm did not make a valid UIM coverage offer and seeking recovery under a reformed contract. On May 9, 2012, State Farm removed the action, invoking this court's diversity jurisdiction. On July 17, 2012, the court entered a scheduling order, which set a September 19, 2012 deadline for the amendment of pleadings. It was not until December 14, 2012 that Pepper's motion to remand was denied.

Pepper's original complaint asserts that Pepper received a UIM offer, but that the offer was defective because State Farm did not use the prescribed forms. Compl. ¶ 17. Pepper's counsel's involvement in the case of Martin v. State Farm Mutual Automobile Insurance Co., 809 F. Supp. 2d 496 (S.D. W. Va. 2011), had made him aware that beginning in 1995 State Farm used a form of its own design, which the court in Martin found to be inadequate. Reply Supp. Mot. Amend 2. Pepper's counsel asserts that he "reasonably believed" that State Farm mailed, and Pepper received, the same noncompliant, post-1995 form that was the subject of the Martin litigation. Mot. Amend 6. Pepper's original complaint was based on that belief.

While the court in Martin concluded that the form did not comply with W. Va. Code § 33-6-31d, it held that failure to use the prescribed form merely negates the insurer's statutory

3

presumption of having made a commercially reasonable UIM offer. 809 F. Supp 2d at 503. Other trial courts, however, had held that failure to use the prescribed form meant that the offer was not commercially reasonable as a matter of law. Mem. Supp. Mot. Stay 6-7. To resolve the conflict, the Mason County Circuit Court in West Virginia, in the case Thomas v. McDermott, Civil Action No. 11-C-8-N, certified the following question to the Supreme Court of Appeals of West Virginia:

> Whether an insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to W. Va. Code § 33-6-31d results in underinsured motorists coverage being added to the policy as a matter of law in the amount the insured was required to offer or merely results in the loss of the statutory presumption and a reversion to the lower standards expressed in Bias, which existed at common law prior to the enactment of W. Va. Code § 33-6-31d.

Id. 13.

On July 23, 2012, pursuant to the continued belief that Pepper received a noncompliant, post-1995 UIM offer form, Pepper moved to stay this case pending resolution of Thomas's certified question. Resp. Opp'n Mot. Amend 3. In its response to the motion for stay, filed August 3, 2012, State Farm explained that it had mailed a compliant form to Pepper on September 30, 1993, not the post-1995 form which was the subject of the certified question. Id. at 3-4. Resp. Opp'n Mot. Stay Ex. A. In turn, Pepper now claims that at the time of the original complaint he

"was unable to determine exactly how, or whether, State Farm has made the mandatory offer . . . because he had no recollection of ever receiving such an offer." Mot. Amend 6. Pepper's proposed amended complaint abandons the contention that he received a noncompliant, post-1995 form and instead asserts that State Farm never mailed a form to Pepper in the first instance.

In his reply to the pending motion, Pepper explains why, having found out his complaint was incorrect on August 3, 2012 and faced with a September 19, 2012 deadline for amendment of pleadings, he did not move to amend the complaint until November 5, 2012. He states that on August 7, 2012, Pepper's counsel wrote to State Farm's counsel explaining that the August 3, 2012 filing was the first he had learned that State Farm sent the UIM offer to Pepper prior to 1995. Reply Supp. Mot. Amend 3. Pepper's counsel further advised that if State Farm could provide documentation of the mailing, voluntary dismissal may be appropriate. Id.

State Farm did not respond, and Pepper's counsel served a formal discovery request on September 5, 2012. Id. State Farm responded on October 5, 2012 with certificates of bulk mailing from 1993, which Pepper contends do not constitute "acceptable proof" that Pepper ever received an offer letter. Id.; id. Ex. C. On October 29, 2012, Pepper's counsel met with State Farm's

counsel and advised him that Pepper wished to amend his complaint to reflect the updated theory that rather than receiving a defective form, Pepper never received a form at all. Id. at 3-4. That same day, Pepper's counsel mailed a letter to State Farm's counsel requesting an agreed order. Id. When State Farm's counsel refused, Pepper filed the motion to amend, on November 5, 2012.

## II. The Governing Standard

Federal Rule of Civil Procedure 15(a)(2) provides that a party who can no longer amend a pleading as of right can still amend by obtaining "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. (emphasis added). In applying Rule 15(a), "[t]he law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). A proposed amendment is futile "if . . . [it] fails to satisfy the requirements of the federal rules," such as Rule 12(b)(6). United States ex rel. Wilson v. Kellogg Brown &

Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (quoting United States ex rel. Fowler v. Caremark RX, LLC, 496 F.3d 730, 740 (7th Cir. 2007)).

The flexibility of the "freely give leave" standard is diminished somewhat when the amendment is sought after expiration of the deadline, if any, for amended pleadings set by a Rule 16(b) scheduling order. Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). Thus, "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) (emphasis added); see also Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

"Good cause" under Rule 16(b) is measured by the movant's diligence in attempting to meet the scheduling order's requirements. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d

229, 243 (2d Cir. 2007); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992).[1] "Another important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." Leary v. Daeschner, 349 F.3d 888, 906 (6th Cir. 2003). Nevertheless, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." Johnson, 975 F.2d at 609 (citations omitted).

### III. Discussion

Pepper's motion to amend applies the Rule 15 "freely give leave" standard but ignores the principally operative Rule 16(b) "good cause" standard. Mot. Amend 7. He argues that the amendment will not prejudice State Farm because discovery just began and the ultimate issue will remain the same, that the amendment involves no bad faith, and that the claim is not futile

---

[1] As the Fourth Circuit has stated, albeit in an unpublished decision, "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cnty., Md., 182 Fed. App'x 156, 162 (4th Cir. 2006) (per curiam).

because failure to prove the mailing would result in UIM coverage being added to the policy.  Id. at 8.

In response, State Farm argues that Pepper's lack of diligence in bringing the motion to amend demonstrates an absence of good cause.  Resp. Opp'n Mot. Amend 7.  It points out that Pepper learned of the factual inaccuracies of the complaint on August 3, 2012, well before the September 19, 2012 deadline for amendment, but waited three months before filing the amendment.  Id. at 8.

Additionally, State Farm argues that the motion to amend does not meet the Rule 15(a) requirements and must be denied.  Id. at 11.  First, it asserts that "[t]o the extent that plaintiff's delay may be considered bad faith, then bad faith is present." Id. at 12.  Second, State Farm contends that Pepper's assertion that no prejudice will result from the motion is based on misrepresentations of the status of the action.  Id.  While Pepper states that discovery has only begun, the scheduling order deadline for written discovery was December 3, 2012 and for depositions is January 17, 2012.  Thus, discovery "has not just 'begun,' but is close to being concluded." Id.  Further, State Farm contends that the ultimate issue "changes dramatically"

depending on whether the focus is on a deficient form or on the mailing of the offer.  Id.

Third, State Farm believes the motion does not satisfy Rule 15(a) due to futility.  It asserts that the May 28, 1998 accident is barred by the ten-year contractual statute of limitations.  See W. Va. Code § 55-2-6.  A direct action against an insurer for UIM coverage sounds in contract and is governed by the statute of limitations for contract actions.  Resp. Opp'n Mot. Amend 13 (citing Syl. Pt. 2, Plumley v. May, 189 W.Va. 734, 735, 434 S.E.2d 406, 407 (1993)).

Additionally, State Farm argues that amendment is futile because the action is barred under the doctrine of res judicata as a result of Pepper's 2000 lawsuit against Timothy Elkins.  Id. at 13.  In September 2000, pursuant to W. Va. Code § 33-6-31(d), Pepper served a copy of the complaint and summons for that action upon State Farm as the Plaintiff's underinsured carrier.  Id. State Farm informed Pepper's counsel in a March 19, 2002 letter that Pepper had not purchased UIM coverage, and ultimately, after settlement, the suit arising from the accident was dismissed with prejudice.  Id. at 14; id. Ex. H.  Because the 2000 lawsuit reached final adjudication, involved the same parties, and could have resolved the issue presented in the amended complaint, see

Blake v. Charleston Area Med. Ctr., Syl. Pt. 4, 201 W.Va. 469, 476, 498 S.E.2d 41, 48 (1997), State Farm argues that Pepper's current claims are barred.

In reply, Pepper contends that the court should judge his timeliness from the October 5, 2012 date on which State Farm provided evidence of its mailing of the form to Pepper. Reply Supp. Mot. Amend. 3. He argues that deficiencies in State Farm's evidence that came to light on that date gave rise to the need for amendment. Id. By contrast, the August 3, 2012 revelation that State Farm did not send Pepper a deficient offer form "would demonstrate the need to dismiss the Complaint not amend it." Id. Pepper does not address either of State Farm's futility arguments.

In a footnote within its response, State Farm addresses Pepper's then-anticipated arguments respecting diligence. Resp. Opp'n Mot. Amend 8 n.3. State farm highlights that Pepper waited over a month after receiving the true UIM offer form (August 3, 2012) to serve discovery upon State Farm (September 5, 2012) and waited another month after receiving discovery responses (October 5, 2012) to file the pending motion (November 5, 2012). To this argument, Pepper replies that State Farm ignores Pepper's counsel's efforts to resolve the matter informally. Reply Supp. Mot. Amend 6. Counsel was acting under the "reasonable

assumption" that State Farm would not have relied upon the purported form unless it had proof of its mailing.  Id.  Additionally, he points out that the time taken "was actually less than that allowed for a party to respond to ordinary discovery requests under Rule 33."  Id.

Having reviewed the pending motion and the opposition to it, the court finds that the motion for leave to amend satisfies Rule 16(b)'s "good cause" standard.  Pepper actively pursued his claim after being informed of his initial error via State Farm's August 3, 2012 opposition.  Before the September 19, 2012 expiration of the period for amendment, he made requests both informal (August 7, 2012) and formal (September 5, 2012) of State Farm for documents related to the mailing.  Pepper perhaps should have waited less than four weeks after the informal request to serve a formal discovery request, but State Farm contributed to any delay by ignoring the informal request and by waiting a month, until October 5, 2012, to comply with the formal request.  It is only at that date that Pepper possessed the complete information on which his amended complaint relies.  While he likely could have filed the motion earlier than November 5, 2012, State Farm's failure to respond until October 5, 2012 contributed to Pepper's failure to file the motion by the September 19, 2012 deadline.  Given the parties' mutual responsibility for this discovery delay,

the court concludes that Pepper has good cause for failing to meet the scheduling order deadline, and he has sufficient cause for not filing his motion for leave to amend until November 5, 2012, after first trying a week earlier to resolve the matter by an agreed order.

Moreover, any prejudice to State Farm caused by the delay will be minimal. Pepper filed the amendment early in the litigation, over two months before the close of discovery and before the court settled its jurisdiction by denying Pepper's motion to remand. While the amendment changes the factual backdrop of Pepper's claims considerably, any additional discovery burden should be negligible. State Farm, in large part, seems to have already assembled the evidence in its possession relevant to the 1993 mailing, and Pepper likely has little discoverable evidence of his own regarding a mailing that occurred nineteen years ago. Any prejudice to State Farm, minimal at most, does not rise to a level sufficient to undermine good cause.

Having determined that Pepper has good cause to modify the scheduling order under Rule 16(b), the court must consider whether the amendment satisfies Rule 15(a)'s "freely give leave" standard. The court finds that it does. Because Pepper's diligence satisfies the good cause inquiry, any lack thereof does

not constitute bad faith under the more forgiving Rule 15(a) standard.  For the same reason, prejudice to State Farm does not constitute adequate grounds for the court to deny the motion under Rule 15(a).

State Farm's claims that the amendment should be denied under Rule 15(a) as futile are equally untenable.  Regarding the statute of limitations, State Farm correctly points out that, pursuant to the West Virginia Supreme Court of Appeals' decision in <u>Plumley</u>, the ten-year contractual limitations period controls this case.  189 W.Va. at 739, 434 S.E.2d at 411 ("[A] direct action against an uninsured or underinsured motorist carrier . . . sounds in contract and is governed by the statute of limitations applicable to contract actions."); W. Va. Code § 55-2-6.

In calculating the elapsed time from the date of the accident, however, State Farm overlooks another sentence from <u>Plumley</u>'s same paragraph: "We also adhere to the general consensus that the statute of limitations does not begin to run until a breach of the contract occurs."  189 W.Va. at 739, 434 S.E.2d at 411.  The limitations period may thus have begun to run not with the May 28, 1998 accident, but rather with State Farm's denial of UIM coverage, which from the record appears to have occurred upon receipt of a March 19, 2002 letter from State Farm.  Resp. Opp'n

14

Mot. Amend, Ex. H. As calculated from the latter date, Pepper's March 16, 2012 filing of this lawsuit came three days before the expiration of the ten-year limitations period.

The amendment is also not made futile by the doctrine of <u>res judicata</u>. State Farm cites no cases in which mandatory service of process to an underinsured carrier pursuant to W. Va. Code § 33-6-31(d) has prevented a plaintiff from later pursuing a declaratory judgment claim against the underinsured carrier. The law appears to compel the opposite conclusion. See <u>Postlethwait v. Boston Old Colony Ins. Co.</u>, 189 W.Va. 532, 537, 432 S.E.2d 802, 807 (1993) ("[A] plaintiff is not precluded under W. Va. Code, 33-6-31(d), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor."). Thus, no exceptions to the "freely give leave" standard are applicable to Pepper's proposed amendment.

## IV.

For the foregoing reasons, the court ORDERS that Pepper's motion to amend his complaint be, and it hereby is, granted. The Clerk is directed to file Pepper's proposed amended

complaint, which accompanies the motion.  If either party needs any modification of the court's schedule for this case as a result of the allowance of the amended complaint, request therefor must be filed on or before December 28, 2012.

The Clerk is further requested to forward copies of this written opinion and order to all counsel of record.

ENTER: December 18, 2012

John T. Copenhaver, Jr.
United States District Judge